Seth M. Sproul (CA SBN 217711)
*sproul@fr.com*
FISH & RICHARDSON P.C.
12860 El Camino Real, Suite 400
San Diego, CA 92130
Telephone: (858) 678-5070
Facsimile: (858) 678-5099

Attorneys for Respondent
APPLE INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

(SAN JOSE DIVISION)

| | |
|---|---|
| CPC PATENT TECHNOLOGIES PTY LTD.,<br><br>Plaintiff,<br><br>v.<br><br>APPLE INC.,<br><br>Defendant. | Case No. 5:21-mc-80091-JST<br><br>**APPLE INC.'S NOTICE OF MOTION AND MOTION TO ALTER OR AMEND JUDGMENT**<br><br>Hearing Date: March 9, 2023<br>Hearing Time: 2:00 p.m.<br>Courtroom: 6<br>Judge: Hon. Jon S. Tigar |

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on March 9, 2023 at 2:00 p.m., or as soon thereafter as the matter may be heard, in the United States District Court, Northern District of California, located at the Oakland Courthouse, Courtroom 6 – 2nd floor 1301 Clay Street, Oakland, Ca 94612, before the Honorable Jon S. Tigar, Defendant Apple Inc. ("Apple") will move, and hereby presents for hearing by the Court this motion to alter or amend judgment for the reasons set forth below.

This motion is based on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the Declaration of Dr. Frank-Erich Hufnagel, the Declaration of Seth M. Sproul, and any additional evidence, authority, or argument as the Court may consider on this matter.

## I. INTRODUCTION

CPC Patent Technologies PTY Ltd. is an Australian non-practicing entity that seeks highly sensitive technical information—including source code—related to Apple Inc.'s biometric security technology. CPC ostensibly needs this information for patent litigation in Germany (although to date, no such litigation has been filed). With no pending litigation, there is no way to know what law firm CPC will retain abroad and who will become privy to this sensitive information. If CPC does eventually file suit in Germany, German law lacks many of the protections available in this country for such sensitive information. And because CPC has no assets in this country, it is unclear to what extent any protective order entered here can be meaningfully enforced against CPC in the United States. Thus, granting CPC's request risks improper disclosure of Apple's confidential information, including source code, in violation of U.S. court orders.

Nevertheless, this Court's most recent order granted CPC's application for discovery under 28 U.S.C. § 1782. This Court based its ruling on the conclusion that the four factors set forth in *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241 (2004) all weighed in favor of granting CPC's application. Yet the Court reached this conclusion without any briefing on two of those four factors—namely, the "nature of the foreign tribunal," and whether the application reflects an "attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States." *Id.* at 264-65. Because CPC did not contest Magistrate Judge Cousin's finding that these factors did not weigh in favor of granting CPC's application, Apple did not present

evidence or argument on these issues. As a result—and as previously unavailable evidence confirms—this Court's ruling contained manifest errors of law and fact. Those errors warrant altering the judgment under Federal Rule of Civil Procedure 59(e) and denying CPC's § 1782 application.

## II. FACTUAL AND PROCEDURAL BACKGROUND

CPC is a patent holding company that is incorporated and has its principal place of business in Australia. *See* ECF No. 1-3, at ¶ 3. It has no assets or shareholders in the United States (except the patents in suit in the NDCA action). [*See* Ex. A to Declaration of Seth M. Sproul, (Deposition of Kevin Dart), at pp. 23-35.] In 2019, it obtained a portfolio of patents related to biometric security from an inventor, who subsequently sued CPC alleging dishonesty associated with the acquisition. [*See* Ex. B (First Cross-Claim, Amended Statement of Cross-Claim, *Charter Pacific Corporation Limited v. Securicom (NSW) PTY. Limited*, Case No. 2018/00056845).] Having secured these patents, CPC has since used them as the basis for suing Apple.

In February 2021, CPC sued Apple in the Western District of Texas, alleging that biometric security measures in Apple's electronic devices infringed three of CPC's patents. ECF No. 36 at 1-2. That case has since been transferred to the Northern District of California. *See CPC Patent Tech. PTY Ltd. v. Apple Inc.*, 22-cv-02553-EJD (N.D. Cal.). In the course of discovery in that litigation, CPC has obtained access to sensitive Apple information, subject to an extremely restrictive protective order. *See* ECF No. 41-3. That order requires, among other things, that particularly sensitive information, including source code, cannot be disclosed to any CPC employee. *Id.* at 11-13, 15-17. It further provides that any "Protected Material designated under the terms of [the] Protective Order" can "be used by a Receiving Party solely for" that litigation "and shall not be used directly or indirectly for any other purpose whatsoever." *Id.* at 1.

CPC has also sued Apple in Australia. [*See* Ex. D, (Originating Application for CPC Australian patent lawsuit).] It did not seek a discovery order from a United States court prior to filing that litigation.

But two months after filing suit in the United States, CPC invoked 28 U.S.C. § 1782 and filed this petition for discovery from Apple. ECF No. 36 at 2. Section 1782 allows district courts

to provide discovery assistance "for use in a proceeding in a foreign or international tribunal." CPC asserted that it sought discovery from Apple for use in patent litigation it allegedly contemplated bringing in Germany. ECF No. 1-1 at 2. It requested an order allowing it to serve on Apple a subpoena for fifteen categories of documents "sufficient to describe" the functioning of Apple's biometric security technology. *See* ECF No. 1-1 Ex. A at 1-2.

Magistrate Judge Cousins denied CPC's application, concluding that the request was "unduly intrusive or burdensome." ECF No. 5 at 3 (quoting *Intel*, 542 U.S. at 265). This Court then denied CPC's motion for de novo review, finding that "[g]iven the nature of CPC's proposed discovery requests, as well as the pending litigation in Texas, Judge Cousins acted within his discretion to deny CPC's application." ECF No. 15 at 2. But the Ninth Circuit vacated that order without addressing the merits of CPC's application, holding that this Court should have applied a de novo standard of review. *CPC Patent Technologies Pty Ltd. v. Apple Inc.*, 34 F.4th 801, 803 (9th Cir. 2022).

On remand, Judge Cousins again recommended denying CPC's application. ECF No. 36 at 5-6. In doing so, he applied the four non-exhaustive factors the Supreme Court identified in *Intel*: (1) whether "the person from whom discovery is sought is a participant in the foreign proceeding," (2) "the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance," (3) "whether the § 1782(a) request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States," and (4) whether the request is "unduly intrusive or burdensome." *Intel*, 542 U.S. at 264-65. Judge Cousins found that the first *Intel* factor weighed against granting the application because Apple might be a participant in the prospective German litigation. *Id.* at 4 n.1. While acknowledging that German courts "are generally receptive to U.S. federal court judicial assistance," Judge Cousins found that the second and third Intel *factors* were neutral. *Id.* at 4. And Judge Cousins concluded that the fourth factor dispositively weighed against granting the application, once again finding that CPC's application was "unduly intrusive and burdensome." *Id.*

1    CPC objected to Judge Cousins' report and recommendation and sought a de novo determination from this Court on whether the § 1782 petition should be granted. ECF No. 41 at 2. Because the "Report denie[d] the Petition based on the first and fourth discretionary [*Intel*] factors," CPC's motion focused on those factors. *Id.* at 6-7. CPC mentioned the second and third factors only in a footnote that largely repeated Judge Cousins' conclusions. *Id.* at 8 n.9. CPC requested an opportunity to submit "supplemental briefing" if this Court determined that it was appropriate to "revisit" these *Intel* factors. *Id.* at 7. Because CPC had not challenged Judge Cousins' determination that these factors did not weigh in favor of granting the petition, Apple similarly addressed only the first and fourth factors. ECF No. 42 at 2-9.

This Court sustained CPC's objection to Judge Cousins' report and recommendation and granted the § 1782 petition. ECF No. 46 at 1. In its order, this Court concluded that all four *Intel* factors weighed in favor of granting CPC's application. *Id.* at 5-11. The Court acknowledged that "[t]he parties do not address [the second and third] *Intel* factors because the report and recommendation found that [those] factors were neutral." *Id.* at 6. But it nevertheless went on to conclude that both factors weighed in CPC's favor. *Id.* This Court reasoned that "there is no evidence that a German court would not be receptive to the discovery sought by CPC or that CPC is attempting to circumvent German proof-gathering restriction[s]." *Id.* Based on that determination, together with the conclusion that the other *Intel* factors favored CPC, this Court granted CPC's § 1782 application. *Id.* at 11.

### III.   LEGAL STANDARD

Federal Rule of Civil Procedure 59(e) provides that a litigant may file "[a] motion to alter or amend a judgment" within "28 days after the entry of the judgment." Relief under Rule 59(e) is appropriate "when (1) the court committed manifest errors of law or fact, (2) the court is presented with newly discovered or previously unavailable evidence, (3) the decision was manifestly unjust, or (4) there is an intervening change in the controlling law." *Rishor v. Ferguson*, 822 F.3d 482, 491-92 (9th Cir. 2016). "A court considering a Rule 59(e) motion is not limited merely to these four situations, however," and "the district court enjoys considerable discretion in granting or

denying the motion." *Allstate Ins. Co. v. Herron*, 634 F.3d 1101, 1111 (9th Cir. 2011) (quotation marks omitted).[1]

## IV. ARGUMENT

The circumstances here warrant relief under Rule 59(e). This Court concluded that the second and third *Intel* factors "weigh[ed] in favor of granting CPC's application." ECF No. 46 at 6. But this Court based this conclusion on only one of several relevant considerations *Intel* directed courts addressing § 1782 applications to consider in assessing these two factors—the receptivity of German courts to U.S. federal-court judicial assistance. *Id.*; *see Intel*, 542 U.S. at 264-65. This Court made that determination without the benefit of any relevant argument or evidence from the parties. ECF No. 46 at 6. In fact, Judge Cousins had concluded, and CPC did not contest, that these factors did not support granting CPC's application. ECF No. 36 at 4; ECF No. 41 at 6-7. And despite CPC's acknowledgment that supplemental briefing would be necessary if the Court were to revisit the second and third factors, this Court did not order supplemental briefing. ECF No. 41 at 7.

Because Apple had no reason to believe that argument or evidence on the second and third *Intel* factors was required, it had no opportunity to submit the evidence or press the arguments that it now advances in this Rule 59(e) motion. This evidence was accordingly "unavailable" within the meaning of the decisions interpreting and applying Rule 59(e). *E.g.*, *teamLab Inc. v. Museum of Dream Space LLC*, 2022 WL 17345905, at *2 (C.D. Cal. Nov. 16, 2022) (granting reconsideration under Rules 59 and 60 to afford party "a more sufficient opportunity to respond to the Court's sua sponte determination" in summary judgment order that rested on legal theory not raised in briefing); *Dupre v. Chevron U.S.A., Inc.*, 930 F. Supp. 248, 250 (E.D. La. 1996) (considering evidence of lease contract to which the plaintiff previously "had access" where the plaintiff "did not realize the

---

[1] Rule 59(e) is the appropriate vehicle for seeking reconsideration of this Court's order because a decision granting or denying a § 1782 application is an appealable judgment. *E.g.*, *In re Premises Located at 840 140th Ave. NE, Bellevue, Wash.*, 634 F.3d 557, 566 (9th Cir. 2011) (orders under § 1782 generally appealable, subject to exceptions not applicable here); *CPC*, 34 F.4th at 806, 809 (same); (2022); *see Schroeder v. McDonald*, 55 F.3d 454, 459 (9th Cir 1995) (a motion for reconsideration of a judgment is a motion to alter amend under Rule 59(e)).

importance that the Court would place on the contractual relationship between the parties"); *see also Lavespere v. Niagara Mach. & Tool Works, Inc.*, 910 F.2d 167, 175 (5th Cir. 1990) (holding that the district court properly exercised its discretion to consider evidence submitted with a Rule 59(e) motion that was not filed sooner due to "negligence, not . . . strategic decisions"). And even if this evidence were previously available, this Court may still consider it in assessing Apple's claim of manifest error. *See Young v. Peery*, 163 F. Supp. 3d 751, 753-54 & n.2 (N.D. Cal. 2015) (Tigar, J.) (considering evidence submitted for the first time with a Rule 59(e) motion, even though it did not "constitute[ ] 'newly discovered evidence'"); *accord*, *e.g.*, *Herron*, 634 F.3d at 1111 (observing that courts may exercise discretion to grant Rule 59(e) motion in "'unusual circumstances'"); *Pittman v. County of San Diego*, 2010 U.S. Dist. LEXIS 117444, at *7 (S.D. Cal. 2010) (exercising "discretion to consider [new] facts in the interest of judicial economy and in light of the importance of the issues.").

As this evidence confirms, this Court's ruling granting CPC's § 1782 application rested on manifest errors of law and fact. To begin, in finding that the second *Intel* factor—"the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance," *Intel*, 542 U.S. at 264—favored CPC, the Court did not consider important characteristics of the German tribunal in which CPC may ultimately file its purported patent suit. While German courts may, as this Court emphasized, be receptive to U.S. federal-court judicial assistance (ECF No. 46 at 6), other aspects of "the foreign tribunal" and the "proceedings" not yet even "underway abroad" militate against granting that assistance here. *Intel*, 542 U.S. at 264; s*ee Heraeus Kulzer, GmbH v. Biomet, Inc.*, 633 F.3d 591, 594-95 (7th Cir. 2011) (observing that the mismatch between American discovery procedures and the law of a foreign tribunal can give rise to "potential abuse[ ]" of § 1782).

Most significantly, as explained in the attached declaration of Dr. Frank-Erich Hufnagel, German courts afford significantly less protection for sensitive information—including source code—than do U.S. courts. In particular, German law affords all parties a right to view the evidence in a case. Hufnagel Decl. ¶¶ 7, 9. Nearly as problematic as German law's guarantee that the parties (not just their lawyers) will have access to even very sensitive evidence are the uncertain protections

German law provides against disclosures to third parties. A third party can access court files as long as it demonstrates "a legitimate 'legal interest.'" Hufnagel Decl. ¶ 11. Although German courts have some procedures for restricting third party access to sensitive information in case such third party access is granted, those restrictions must be ordered by a court. Hufnagel Decl. ¶¶ 10, 11. With no litigation yet filed, it is impossible to know whether and to what extent the German court will act to shield information from third parties. Hufnagel Decl. ¶¶ 4, 10, 11. That is in stark contrast to the practices in U.S. courts, where particularly sensitive information may be limited to attorneys' eyes only and is certainly shielded from third parties. *E.g.*, ECF 41-3; Northern District of California, Model Protective Order for Litigation Involving Patents, Highly Sensitive Confidential Information and/or Trade Secrets, *available at* https://cand.uscourts.gov/model-protective-orders. These features of the German legal system raise serious concerns about disclosing Apple's source code in response to CPC's § 1782 application. *See In re JSC United Chemical Co. Uralchem*, 2020 WL 4251476, at *7 (D.N.J. July 24, 2020) (finding that second *Intel* factor weighed against § 1782 discovery and denying the application based on absence of due process protections in foreign tribunal).

    This Court's finding on the third *Intel* factor—"whether the § 1782(a) request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States," *Intel*, 542 U.S. at 264—reflects similar errors of law and fact. This Court deemed this third factor to weigh in CPC's favor because there was no evidence that CPC was seeking to "circumvent *foreign*-proof gathering restrictions." ECF No. 46 at 6 (emphasis added). But this *Intel* factor also requires consideration of whether CPC seeks to circumvent "policies of . . . the United States." *Intel*, 542 U.S. at 264. Here, there is every reason to think that CPC is seeking to evade such policies. This Court's order raised and then quickly dismissed the possibility that CPC might be using § 1782 "as a stalking horse to attack a protective order issued in another matter." ECF No. 46 at 10 n.2. The evidence belies that conclusion. As described above (*supra* pp. 2-3), CPC and Apple are currently engaged in separate litigation regarding the same technology, in which discovery is governed by a robust 31-page protective order. That order imposes strict limitations—including, among other things, requirements that certain particularly sensitive information be

restricted to attorneys' eyes only and robust protections for source code. ECF 41-3 at 11-15. CPC, however, seeks to secure that very same information in this § 1782 application and then send it abroad to a jurisdiction in which the same protections are not available. Hufnagel Decl. ¶ 7.

Indeed, CPC has not been shy about acknowledging its goal of avoiding the limitations of this protective order. CPC has asserted that Apple has already "produced some of the responsive documents [including source code] in the other action pending between the parties." ECF No. 34 at 2-3. CPC thus needs those documents reproduced here only so that it may avoid the restrictions imposed by the protective order in the other action. ECF No. 41 ("CPC cannot use the documents produced in the Texas Action in the German Action because the Stipulated Protected Order entered in that action precludes use of documents produced thereunder in any action other than the Texas Action.").

What is more, it appears that CPC has already violated this protective order. The order prohibits using protected materials produced in that action "directly or indirectly for any . . . purpose whatsoever" in any other litigation. ECF 41-3 at 1. Yet CPC has seemingly violated that restriction by using its knowledge of documents produced in the other litigation to support its § 1782 application here. *See* ECF No. 34 at 2–3 (CPC arguing that Apple could "simply reproduce . . . documents in this action" that were previously produced in the parallel litigation).

These concerns are further heightened by additional reasons to question CPC's adherence to any U.S. protective order. CPC obtained the patents it is currently asserting in the parallel litigation in this court and Australia in 2019. [*See* Ex. B (First Cross-Claim, Amended Statement of Cross-Claim, *Charter Pacific Corporation Limited v. Securicom (NSW) PTY. Limited*, Case No. 2018/00056845); Ex. C (Affidavit of Christopher John Burke, April 2021); Ex. [*See*; Ex. D, (Originating Application for CPC Australian patent lawsuit).] CPC does not make or sell any products whatsoever; it exists for the sole purpose of purchasing and then suing on patents originally obtained by other entities. [*See* ECF No. 1-3, at ¶ 4; *see also* Ex. A to Declaration of Seth M. Sproul, (Deposition of Kevin Dart), at pp. 23-35.] As a result, CPC appears to have no meaningful assets in the United States. There is therefore no mechanism by which an American court can enforce the terms of a protective order against CPC itself.

1  The Ninth Circuit has previously held that similar concerns warrant denial of a § 1782 application. In *Four Pillars Enterprises Co., Ltd. v. Avery Dennison Corp.*, the Court considered a § 1782 request for "extensive confidential and trade-secret material" that had already been produced in civil litigation in this country. 308 F.3d 1075, 1079 (9th Cir. 2002). As in this case, that material was subject to a restrictive protective order imposed by a federal district court. *Id.* at 1077. In light of the sensitive nature of the material sought and evidence that the § 1782 applicant would attempt to misuse it, the Ninth Circuit held "that a discovery order for this material under § 1782 would improperly frustrate" the existing protective order and affirmed the denial of the application. *Id.* at 1079. The same reasoning compels denial of CPC's § 1782 application here.

Finally, the errors in this Court's analysis of the second and third *Intel* factors undermined its analysis of the fourth factor as well. In dismissing Apple's arguments on that factor, this Court distinguished *Via Vadis Controlling GmbH v. Skype, Inc.*, which concluded that a similar request for the respondents' "source code and related documents" was unduly burdensome. 2013 WL 646236, at *3 (D. Del. Feb. 21, 2013). This Court reasoned that "the totality of the *Intel* factors in *Via Vadis* was markedly different than it is here." ECF No. 46 at 8. In particular, the Court emphasized that in *Via Vadis* the § 1782 application would have allowed circumvention of German courts' "rules and enforcement procedures," as well as a "protective order that specifically prohibited disclosure of the source code in the proceedings in Germany." *Id.* (internal quotation marks and original alterations omitted). But, as detailed above, here the second and third *Intel* factors likewise do not support granting CPC's application. *Supra* pp. 6-8. Even if, as this Court concluded, there is no "bright-line rule that a court can never order production of source code in response to a Section 1782 petition" (ECF No. 46, at 8), that does not mean that such production should be ordered in the circumstances present here. *See London v. Does*, 279 Fed. Appx. 513, 514-15 (9th Cir. 2008) (recognizing that *Intel* requires balancing "the need for the evidence" and the "invasion required," among other things). *Via Vadis*'s conclusion regarding the fourth Intel factor should be afforded greater weight, and the application here similarly should have been denied.

## V. CONCLUSION

For the foregoing reasons, Apple requests that the Court amend its order and deny CPC's § 1782 application.

Dated: January 31, 2023
FISH & RICHARDSON P.C.

By: /s/ Seth M. Sproul
Seth M. Sproul
Attorneys for Respondent
APPLE INC.