Seth M. Sproul (CA SBN 217711); *sproul@fr.com*
FISH & RICHARDSON P.C.
12860 El Camino Real, Suite 400
San Diego, CA 92130
Telephone: (858) 678-5070
Facsimile: (858) 678-5099

Attorneys for Defendant,
APPLE INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| CPC PATENT TECHNOLOGIES PTY LTD., <br><br> Plaintiff, <br><br> v. <br><br> APPLE INC., <br><br> Defendant. | Case No. 4:21-mc-80091-JST <br><br> **DECLARATION OF SETH M. SPROUL IN SUPPORT OF ENTRY OF MODIFIED PROTECTIVE ORDER** |

I, Seth M. Sproul, hereby declare and state as follows:

1.      I am a licensed attorney in the State of California. I am a principal with the law firm Fish & Richardson P.C., representing Defendant Apple Inc. in this matter. I provide this declaration in support of the entry of the joint proposed protective order. I have personal knowledge of the matters set forth in this declaration, and if called as a witness, I could and would testify competently and truthfully to each of the statements in this declaration under oath.

2.      The parties' proposed protective order (Joint Stipulated Modified Protective Order, Dkt. 47; referred to herein as the "Modified Protective Order") is based on the Northern District of California's model Stipulated Protective Order for Litigation Involving Patents, Highly Sensitive Confidential Information and/or Trade Secrets ("Model NDCA Protective Order").  Pursuant to Paragraph H(b) of Judge Tigar's Standing Order for All Civil Cases, I provide this declaration in support of the modifications to the model protective order proposed by the parties. The proposed modifications to the Model NDCA Protective Order are shown in redline in Exhibit 1 attached to this Declaration.

## I.   CPC PATENT INFRINGEMENT CASE

3.      The parties are engaged in ongoing patent litigation, currently pending before Judge Davila, in CPC Patent Technologies Pty Ltd. v. Apple Inc., Case Number: 5:22-cv-02553-EJD.  That case was originally filed in the Western District of Texas, and was ordered transferred from Judge Albright's court by the Federal Circuit on mandamus petition. Prior to transfer, Judge Albright entered a Protective Order for that litigation, based largely on his model protective order. (Dkt. 39; "553 Protective Order"). However, the parties agreed to modify the Model NDCA Protective Order while negotiating the initial protective order governing this case.  (Dkt. No. 33; "1782 Stipulated Protective Order").

4.      Notably, the 1782 Stipulated Protective Order did not address source code production, but deferred the subject to a later addendum, if needed.  Dkt. No. 33 at 16 (Section 12.5 – Placeholder for Source Code Addendum).

5.      On January 3, 2023, the Court ordered that the parties submit a modified protective order that includes, "among other things, provisions addressing the production of source code and

requiring CPC to seek permission from Judge Cousins before using any information produced pursuant to the order in Germany." Order Granting Motion for De Novo Determination of Dispositive Matter Referred to Magistrate Judge (Dkt. No. 46).

6. To address specific issues relating to production in this case, including the potential for source code production, the parties negotiated additional specific provisions. Pursuant to Paragraph H(b) of Judge Tigar's Standing Order for All Civil Cases, I provide the following explanations for each modification to the Model NDCA Protective Order agreed to by the parties.

## II.     MISCELLANEOUS MODIFICATIONS

7. Introduction:  The parties added the "whereas" clauses at the beginning of the Modified Protective Order to provide additional information surrounding the procedural history as to how the parties arrived at the Modified Protective Order, including an explanation as to the unique nature of the Modified Protective Order covering information that may be used in a foreign proceeding. More specifically, the Modified Protective Order addresses the proceedings to be initiated by Petitioner CPC Patent Technologies PTY Ltd. in Germany ("German Proceedings") for patent infringement against Respondent Apple Inc.'s related entity, which at this time has been identified as Apple Retail Germany B.V. & Co. KG.

8. Section 1 Purposes and Limitations:  The parties removed the last sentence of Section 1, which stated that the parties are not entitled to file confidential information under seal without following the local rules and procedures. The parties kept the underlying referenced Section (renumbered from 14.4 to 12.4) specifying that the Modified Protective Order does not entitle filing under seal without following appropriate civil local rules, and the parties added additional requirements on the use of such information in the German Proceedings. The parties deleted the last sentence of Section 1 because of the nature of the 1782 petition where it is unlikely that protected materials will be filed. In place of the last sentence of Section 1, the parties added a provision in accordance with the Court's Order Granting Motion for De Novo Determination of Dispositive Matter Referred to Magistrate Judge (Dkt. No. 46), requiring CPC to take reasonable steps in Germany to comply with the provisions of the Protective Order.  This is needed because German law may not otherwise automatically protect Apple's confidential information without it being

proactively requested by the parties, and even then may not provide all the same protections available in the United States.  Even with these modifications, Apple remains concerned about how its information will be handled in Germany and reserves the right to seek further appropriate relief.

9. Section 2 Definitions:  The parties made minor changes to several definitions to account for the nature of the 1782 petition and the German Proceedings.  For example, the parties added a definition for the German Proceedings and for source code in the event that CPC seeks source code for use in the German Proceedings.  Additionally, given the nature of the 1782 petition, the parties agreed to modify the "HIGHLY CONFIDENTIAL – SOURCE CODE" designation to only allow access to outside attorneys (*i.e.,* "HIGHLY CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY – SOURCE CODE").

10. Section 5.2(b) Manner and Timing of Designations:  The parties removed Section 5.2(b) because depositions are not contemplated given that the information sought is limited to already set forth requests for production.

11. Section 7.1(a) Access to and Use of Protected Material:  The parties added a provision that CPC will not seek to use Apple Protected Material in the German Proceedings without first getting approval from Judge Cousins.  *See* Dkt. No. 46 at 11 (requiring the Modified Protective Order to include "provisions addressing the production of source code and requiring CPC to seek permission from Judge Cousins before using any information produced pursuant to the order in Germany.")  Further, the parties agreed to a dispute resolution process where production is objected to by Apple.  *See also* Section 12.6 Disclosure and Review of Source Code, sub-section (xii) (requiring Judge Cousins' approval for any use of source code).

12. Section 7.2 and 7.3 Disclosure of "CONFIDENTIAL" and "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" Information or Items:  The parties agreed to renumber Section 7.2 to Section 7.3, which now governs the disclosure of both "CONFIDENIAL" and "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" protected materials. The parties propose this modification given the nature of the 1782 petition and because Apple expects to primarily produce protected material with designations as either "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" or "HIGHLY CONFIDENTIAL – OUTSIDE ATTORNEYS'

EYES ONLY – SOURCE CODE." Additionally, the parties moved the procedure governing material designated as "HIGHLY CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY – SOURCE CODE" to Section 12 for consolidation with the provisions that govern the review of Source Code, which is discussed in Section III below.

13. Section 9 Source Code: The parties agreed to remove Section 9 and add the provisions of Section 9 into Sections 12.5 and 12.6, which are discussed in Section III below. As discussed below, the parties modified the provisions found in Section 9 of the Model NDCA Protective Order to be consistent with the parties' prior agreement on source code procedures governed by the 553 Protective Order entered by Judge Albright in the Western District of Texas.

14. Section 11 Non-Party's Protected Material Sought to be Produced in This Litigation: The parties deleted Section 11, governing protection of non-party's information sought to be produced in this action, as inapplicable because the discovery contemplated by the 1782 petition is limited to already specified requests for production.

15. Section 12.3 Export Control: The parties modified Section 12.3 governing export control to include specific requirements necessitated due to the nature of the 1782 petition and the German Proceedings.

16. Section 12.4(b) Filing Protected Material in the German Proceedings: The parties added a provision that ensures CPC will seek proper designation for materials filed in the German proceedings; that CPC will not publicly file Apple Protected Material without consent from Apple; and that CPC will seek the "highest available protection under German law" for Apple Protected Material.

17. Other edits were made to, *inter alia*, reconcile language to ensure application of the Modified Protective Order to production in this case for separate German Proceedings.

### III. MODIFICATIONS RELATED TO SOURCE CODE

18. Petitioner CPC has accused of infringement various Apple products for their use of Touch ID and Face ID biometric security functionality. This Court has said that source code may be requested as part of CPC's 1782 petition. Such source code is highly sensitive and trade secret-protected source code, and includes portions of Apple's proprietary operating systems for the

iPhone, iPad, and Macbooks. The source code provisions of the Modified Protective Order are intended to further protect this source code given its sensitivity, as detailed below.

19. Apple has stated that it has invested billions of dollars in research and design on its product development. *See*, Apple commits $430 billion in US investments over five years - Apple (last visited January 24, 2022).

20. The source code implicated in this case is especially sensitive because it relates to Apple's biometric security functionality of its devices. It is a core asset of Apple's business that includes highly confidential, highly valuable, proprietary trade secrets of Apple. Apple's source code is neither generally known nor easily accessible because it comprises technical details that cannot be gleaned from observation of Apple's products, or the use thereof, and is not published or made public by Apple. Apple's source code has commercial value—and Apple has a legitimate interest in keeping this information confidential—because it is of considerable importance for Apple's competitiveness and business success.

21. The source code is provided the highest level of protection and security within Apple and is protected by several layers of access control. Any production of source code outside the tight controls maintained within Apple's facilities poses the risk of unauthorized disclosure and great injury to Apple. For these reasons, and because of its importance to Apple's business, Apple strictly limits access to this code, even inside the company.

22. During litigations, Apple provides outside counsel and other approved individuals (such as approved experts) access to portions of its code for review on source code review machines under strict security protocols, as reflected by the modifications that Apple has made to the model order. These protocols are necessary because the electronic nature of source code renders the code easily copied. These strict restrictions are necessary in this litigation in order to protect the confidentiality of Apple's source code and Apple's business interests in maintaining its confidentiality.

23. In order to maintain the security of Apple's source code, the parties have agreed to implement source code provisions Sections 12.5 and 12.6 that enhance security when it comes to the treatment of source code in this case, and also to further clarify how that source code should be

treated by the parties to avoid disputes as the case proceeds.

24. The provisions of Sections 12.5 and 12.6 are based on the provisions of Section 9 of the NDCA Model Protective Order for patent cases, which have been modified to add protections for both Apple and the reviewing party and to provide consistency with the parties' prior agreement on source code procedures governed by the 553 Protective Order entered by Judge Albright in the Western District of Texas.  These provisions are justified here because they include detail about the mechanics of the inspection and certain limitations on the German Proceedings.

25. Section 12.5 describes who may have access to Protected Material designated as source code, tracking Section 7.3 for Protected Material designated "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY."

26. Section 12.6 provides specific requirements for the inspection.  These include the following sections, numbered per the below:

    a. Relates to the location of the inspection and allowed time for the inspections.

    b. Relates to notice required to perform an inspection of source code.

    c. Provides additional details of the inspection:

        i. Relates to mechanics of the production, including the provision of requested tools, the format of the code, and limitations on connectivity of the source code computer.

        ii. Relates to limits of access to recordable media to be used with the inspection.

        iii. Relates to allowance of note taking during inspection.

        iv. Similar to the Model NDCA Protective Order, relates to ability to visually monitor the inspection, and limits thereto.

        v. Relates to printing of source code, and limits and resolution of objections thereto.

        vi. Relates to disclosure and logging of individuals who will perform the source code review.

        vii. Relates to access to the source code room.

        viii. Relates to limitations on the transmission of source code.

      ix.    Relates to limitations on use and shipment of source code once printed by the receiving party.

      x.    Relates to storage of produced source code.

      xi.    Relates limitations on use of source code in the German proceeding.

      xii.    Relates to specific limitations on production and use of source code in the German proceeding, including requiring approval by Judge Cousins in advance of any production in this case of source code.

      xiii.    Relates to limitations on source code use in the German proceeding based on export control restrictions.

27. The NDCA Model Protective Order did not account for these specific provisions or did not provide for this specific level of protection. In particular, sections 12.6(c)(xi), (xii), and (xiii) provide for specific treatment of source code relating to the German Proceeding. The NDCA Model Protective Order did not address these issues.

28. For these reasons, the parties agreed to modify the Model NDCA Protective Order given the nature of the 1782 petition and the German Proceedings, and to provide consistency with the 553 Protective Order.

I declare under the penalty of perjury of the laws of the United States of America that the foregoing is true and correct. Executed on February 10, 2023, in San Diego, California.

Dated: February 10, 2023                FISH & RICHARDSON P.C.

By: /s/ Seth M. Sproul
      Seth M. Sproul
Attorneys for Defendant
APPLE INC.